Van Brunt, J.
(After referring to the above facts.)—This'motion must necessarily be governed by the act of Congress of March 3, 1875, which seems to have been intended to supersede all previous legislation upon the subject of the removal of causes from the State courts to the United States circuit court. Upon reading the first and second sections of that act, so far as applicable to cases similar to the one at bar, it may appear that the provisions of section second are contrary to the restriction of the first section; but I *20 think it is possible to harmonize them so as to give each its proper force and effect.
Section 1, after stating in what cases the circuit court of the United States shall have original cognizance, concurrent with the courts of the several States (among which it enumerates suits in which there shall be a controversy between citizens of different States), provides: “And no civil suits shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; . . . . nor shall any circuit or district court have cognizance of any suit founded on contract, in favor of an assignee, unless a suit might have been prosecuted in such courts to recover thereon if no assignment had been made, except in cases of promissory notes, negotiable by the law merchant, and bills of exchange.”
If this section stood alone it might be difficult to see why Congress, in the act in question, in the latter clause of the paragraph quoted, has made use of language so different from that used in the first paragraph. When they desire to prevent suits being brought, except in certain districts, they simply said that “no civil suits shall be brought,” &c.; but when they desire to restrict the circuit court from entertaining jurisdiction of suits brought by an assignee, except in certain cases, they say “that no circuit or district court shall have cognizance of any suit founded on contract,” &c.; not that no civil suit in favor of an assignee shall be brought before them by any original process, &c., unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made; but they say that circuit courts shall not have cognizance of such suits, unless, &c.
This language is much more comprehensive ; and it is difficult to see how stronger language could have been used to show that Congress did not intend that *21 circuit courts should entertain suits by an assignee, whether brought in these courts by original process or otherwise, unless the action might have been prosecuted in such courts if no assignment had been made.
Section 2 then provides: “That any suit of a civil nature at law or in equity, now pending, or hereafter brought in any State Court. ... in which there shall be a controversy between citizens of different States . . . may be removed by either party into the Circuit Court of the United States for the proper district.” t£ the construction is placed upon section 2 that the removal of this cause requires, then, notwithstanding Congress in section 1 has said, not only that no suit, such as the one at bar, shall be commenced by original process in the circuit court, but that such court shall not have cognizance of a suit where the parties are situated as they are in this case, merely because the action was commenced in a State court, and is removed to the circuit court, pursuant to section 2, the positive prohibition of section 1 is overcome. Section 1, in the most positive language, prohibits the circuit courts from entertaining any such case; and the only construction that can harmonize the two sections seems to be that section 2 is meant to apply only to cases in which jurisdiction has been conferred upon circuit courts, although it does not expressly say so. If this is not the true construction, I am unable to see why, in speaking of suits like the one at bar, Congress should have made use of the word cognizance, and have used it only in that connection. It is evident that it was intended to provide for the cases in which circuit courts should obtain jurisdiction otherwise than by original process, and to prevent the circuit courts entertaining, in any manner, suits brought by assignees, unless they could have acquired jurisdiction of such action if no assignment had been made. It is clear that if no assignment had been made the circuit courts *22 could not have acquired original jurisdiction of this action, because the assignor and the defendant both live in the same State.
I am of the opinion, therefore, that the circuit court of the United States could not take cognizance of this action if an order of removal, pursuant to the provisions of sections 2 and 3 of the act of Congress, March 3, 1875, was made, and consequently the motion to remove should be denied, with ten dollars costs, to abide event.
Note oh the Removal of Causes.
The act of 1875 (18 Stat. at L. ch. 3, p. 471), after defining the jurisdiction of the circuit court, in a provision quoted in Leutze v. Butterfield (p. 30, above), proceeds as follows : § 3. “ That any suit of a civil nature, at law or in equity, now pending or hereafter brought in any State court where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and
[1] “Arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or
[3] “In which the United States shall be plaintiff or petitioner, or,
[8] “In which there shall be a controversy between citizens of different States, or
[4] “A controversy between citizens of the same State claiming lands under grants of different States, or
[5] “ A controversy between citizens of a State and foreign States, citizens or subjects.
“Either party may remove said suit into the circuit court of the United States for the proper district. And
[6] “When in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then, either one or more of the plaintiffs or defendants actually interested in such controversy, may remove said suit into the circuit court of the United States for the proper district.
“ § 3. That whenever either party, or any one or more of the plaintiffs or defendants entitled to remove any suit mentioned in the next preceding section, shall desire to remove such suit from a State court to the circuit court of the United States, he or they may make and file a petition in such suit in such State court, before or at the term *23 at which said cause could be first tried and before the trial thereof for the removal of such suit into the circuit court to be held in the district where such suit is pending, and shall make and file therewith a bond, with good and sufficient surety, for his or their entering in such circuit court, on the first day of its then next session, a copy of the record in such suit, and for paying all costs that may be awarded by the said circuit court, if said court shall hold that such suit was wrongfully or improperly removed thereto, and also for their appearing and entering special bail in such suit, if special bail was originally requisite therein, it shall then be the duty of the State court to accept said petition and bond, and proceed no further in such suit, and any bail that may have been originally taken shall be discharged; and the said copy being entered as aforesaid in said circuit court of the United States, the cause shall then proceed in the same manner as if it had been originally commenced in the said circuit court.” [Then follows a clause regulating somewhat differently, removal in case of State land grant controversies. Also one as to trial by jury.]
Nature of the cause,—All criminal cases are excluded from the operation of this act; and in civil cases some difference of opinion exists as to whether special proceedings are within it. Under the judiciary act,—which gave the right of removal only to a defendant who had not submitted himself to the jurisdiction,—it was well held that a plaintiff against whom an answer demanding equitable relief had been interposed, was not within the act. West v. Aurora City, 6 Wall. 139. See also Gaines v. Fuentes, below.
A proceeding which, though special and statutory, and founded on jurisdiction of the res, and ending, like a proceeding in rem, in a judgment conclusive against an absent claimant, is nevertheless removable if it be a remedy substantially consistent with the ordinary modes of procedure on the equity side of the Federal courts. Thus a special proceeding, in substance a bill of peace, but citing by publication all persons who can set up any right, &c., to land bought at an official sale, to show cause, &c., or be barred, is removable. Parker v. Overman, 18 How. U. S. 137, 140.
So a proceeding commenced without process,—as an appeal by a land owner from an award of damages, made by commissioners appraising lands taken by a business corporation,—becomes, when it is docketed and pending, as an action at law would be, removable. Patterson v. Boom Co., 3 Dill. 465.
Amount in controversy.—All cases are excluded that do not consist of a controversy as to a subject matter of pecuniary or property value exceeding $500. See 16 Abb. Pr. N. S. 97, note; DeKrafft v. Barney, 2 Black, 704; and cases cited at 707; Pratt v. Fitzhugh, 1 Id. 271.
*24 But a market value is not necessary under such a restriction. Sparrow v. Strong, 3 Wall. 103. Compare 21 How. U. S. 290.
Interest, when claimed and recoverable, may be included for the purpose of determining whether the sum exceeds $500. See Sloan v. Lewis, 22 Wall. 150; Bank of U. S. v. Daniel, 12 Pet. 32; and in such cases it is enough, if with interest down to the time of application, the claim exceeds $500, McGinnity v. White, 3 Dill. 350. It is otherwise of the limit of judgments reviewable by error. Walker v. U. S., 4 Wall. 163.
The amount which is claimed, and appears to be recoverable by the plaintiff’s process and pleading, is that which determines the question. If the allegations of the pleading show a claim not exceeding $500— an empty demand for a judgment exceeding $500, is not available. Lee v. Watson, 1 Wall. 337. But on the other hand, when either the process or the pleading fails to fix the sum, the other may be referred to to ascertain it; and if neither disclose it, as sometimes in case of an injunction suit, the court may receive other evidence. For a collection of the authorities on this point see Fisk v. Union Pacific R. R. Co., 10 Abb. Pr. N. S. 483, note, and McGinnity v. White, 3 Dillon 350; Hulsecamp v. Teel, 2 Dall. 358; Gordon v. Longest, 16 Pet. 97.
It seems, that where the main controversy is between citizens of different states, the whole cause may be removed, although questions between citizens of the same State are incidentally involved. Osgood v. Chicago, &c., R. R. Co., 2 Cent. L. J. 275, 283; Lockhart v. Horn, 1 Wood, 628. Compare First Nat. B’k v. King, &c. Co., 2 Cent. L. J. 505.
The petition is treated by some of the authorities as a merely formal act, accompanying the bond; and the filing of both a step which ipso facto terminates the jurisdiction of the State court, if the statutory facts exist, and without any act on the part of the State court. Osgood v. Chicago, &c. Rw. Co., 2 Cent. Law J. 275, 505, 616; and according to this view the petition need not be verified.
Opposed to this is the view that the presenting of the petition and bond to the State court imports its scrutiny of the security, and its hearing and granting, or refusing the petition.- This is the rule followed in the cases reported in the text; and is understood to be agreeable to the practice in several other State courts. See also Railway Co. v. Ramsey, 22 Wall. 328.
According to this view, the petition should be verified, unless the facts all appear on the record. See Anon. 1 Hopk. 115. It was held in Jones v. Amazon Ins. Co. (5 Insurance Law J. 878), that the removal is not effected until the praecipe directing the clerk to certify the record has been filed with him.
After a proper application has been denied by the State court the *25 applicant does not, by proceeding to trial there, waive the objection to jurisdiction (Kanouse v. Martin, 15 How. U. S. 198; Stanley v. Chicago, &c. R. R. Co., 62 Mo. 511; Ins. Co. v. Dunn, 19 Wall. 214; Gordon v. Longest, 16 Pet. 97; Herryford v. Ins. Co., 42 Mo. 148).
Other cases on this act.
In Gaines v. Fuentes (U. S. Supreme Court, October, 1875,) [probably to be reported in 92 U. S., 2 Otto] it was held, that an act giving removal, ipso facto gave jurisdiction to the Federal Court; and it was considered also, that a proceeding for the probate of a will, being a proceeding in rem. and not necessarily involving adversary parties, or all the world being parties, is not a ‘‘ case at law or in equity," within the act; but that a suit in equity to avoid a will, and in effect revoke a probate, is within the statute.
In that case, it appeared that in 1855, the appellant, Mrs. Gaines, applied to the second district court for the parish of Orleans, which by the law of Louisiana has probate jurisdiction, for probate of the will of Daniel Clark, which was decreed, ex parte, with leave to any persons to contest the will in a direct action, or by way of defense. Mrs. Gaines then brought suits in the United States circuit court, to recover against the Fuentes, and others who were in possession of property to which Mrs. Gaines claimed title under the will.
Fuentes and others, the present defendants in error, then brought this present suit in the same district court of Louisiana, to revoke the will and recall the probate, on the ground of alleged falsity and insufficiency of the evidence on which it was granted, and the incapacity of the appellant to inherit or take as devisee from the deceased.
Thereupon, the appellant petitioned the State court, under the judiciary act, for a removal to the circuit court of the United States, on the ground that she was a citizen of New York, and the petitioners for revocation of probate were citizens of Louisiana. The court denied this on the ground that by propounding the will in the State court, she bad submitted to the jurisdiction, and could not remove the consequent action to revoke probate.
She then applied for removal under the act of 1867, on the ground of prejudice and local influence. This application was denied on the ground that the subject matter of the case was one of which the United States circuit court would have no jurisdiction. The cause in the State court then proceeded to a decree, by which the probate was revoked; and from the decree of the supreme court of the State affirming this decree, the appellant brought error to the United States supreme court.
The U. S. supreme court reversed the decree for error in refusing the removal.
*26 Field, J., in delivering the opinion, says: “The action, as already stated, is in form to annul the alleged will of Daniel Clark, of 1813, and to recall the decree by which it was probated. But as the petitioners are not heirs of Clark, nor legatees nor next of kin, and do not ask to be substituted in place of the appellant, the action cannot be treated as properly instituted for the revocation of the probate, but must be treated as brought by strangers to the estate, against the devisee, to annul the will as a muniment of title, and to restrain the enforcement of the decree by which its validity was established so far as it affects their property. It is in fact an action between parties, and the question for determination is whether federal courts can take jurisdiction of an action brought for the object mentioned between citizens of different States, upon its removal from a State court.”
After discussing and affirming the constitutionality of the act of 1867, and holding that whatever cause the act makes removable, it ipso facto, gives jurisdiction to the court into which it is removed, the opinion concludes as follows:
“ Nor is there anything in the decisions of this court in the case of Gaines ®. New Orleans (6 Wall. 642), nor in the case of Broderick’s Will (21 Id. 503), which militates against these views. In Gaines v. New Orleans, this court only held that the probate could not be collaterally attached, and that until revoked, it was conclusive of the existence of the will and its contents. There is no intimation given that a direct action to annul the will, and restrain a decree admitting it to probate, might not be maintained in a federal as well as a State court, if jurisdiction of the parties was once rightfully obtained.
In the case of Broderick’s Will, the doctrine is approved, which i« established both in England and in this country, that by the general jurisdiction of courts of equity, independent of statutes, a bill wid not lie to set aside a will or its probate; and whatever the cause ot' the establishment of this doctrine originally, there is ample reason for its maintenance in this country from the full jurisdiction over the subject of wills vested in the probate courts, and the revisory power over their adjudications in the appellate courts. But that such jurisdiction may be vested in the State courts of equity by statute, is there recognized, and that when so vested the federal courts sitting in the States where such statutes exist, will also entertain concurrent jurisdiction in a case between proper persons.
“There are, it is true, in several decisions of this court, expressions of opinion that the federal courts have no jurisdiction in matters of probate, referring particularly to the establishment of wills, and such is undoubtedly the case under the existing legislation of con *27 gress. The reason lies in the nature of the proceeding to probate a will as one in rem, which does not necessarily involve any controversy between parties; indeed in the majority of instances no such controversy exists. In its initiation all persons are cited to appear, whether of the State where the will is offered, or of other States. From its nature and from the want of parties, or the fact that all the world are parties, the proceeding is not within the designation of cases at law or in equity, between parties of different States, of which federal courts have concurrent jurisdiction with the State courts, under the judiciary act. But whenever a controversy in a suit between such parties arises respecting the validity or construction of a will, or the enforcement of a decree admitting it to probate, there is no more reason why the federal courts should not take jurisdiction of the case, than there is that they should not take jurisdiction of any other controversy between the parties.
' ‘ But, as already observed, it is sufficient for the disposition of this case, that the statute of 1867, in authorizing a transfer of the cause to the federal court, does, in our judgment, by that fact invest that court with all the needed jurisdiction to adjudicate finally, and settle the controversy involved.”
“Judgment reversed, and removal directed.”
As to what proceedings in a probate court are proceedings in rem, compare Mutual Benefit Life Ins. Co. v. Tisdale, 91 U. S. (1 Otto,) 242; Carroll v. Carroll, 60 N. Y. 121; Schneider v. McFarlane, 2 N. Y. 459.